IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

ALLSTATE INDEMNITY COMPANY and
ALLSTATE INSURANCE COMPANY                                            PLAINTIFFS

VS.                          CASE NO. 4:10-CV-00038-JMM

MAXIE E. BOBBITT, PATRICIA H. BOBBITT,
KEN BURNETT AND MARJORIE BURNETT                                      DEFENDANTS

ORDER

Pending is Plaintiffs' Motion for Summary Judgment. Plaintiffs seek a declaratory judgment that they owe neither a duty of indemnification nor a duty to provide a defense to Ken and Marjorie Burnett ("the Burnetts") with respect to the six claims brought by Maxie E. and Patricia H. Bobbitt ("the Bobbitts") in the Bobbitt's state court action. For the reasons stated below, the Motion is GRANTED.

Facts

Plaintiffs Allstate Indemnity Company and Allstate Insurance Company (collectively, "Allstate") issued insurance policies to the Burnetts effective from August 13, 2005 to August 13, 2006 and October 12, 2006 to October 12, 2007. The policies contained two types of coverage. "Coverage A" provided homeowner's coverage for damages to the Burnetts' personal dwelling at 14200 Beau Vue, Little Rock, Arkansas. It contained exclusions for, among other things, landslides, accumulation of water under the house, and defective siting and construction work. "Coverage X" provided family liability coverage, under which Allstate would pay, in pertinent part, "damages which an insured person becomes legally obligated to pay because of . . . property damage arising from an occurrence . . . which . . . is covered by this part of the policy." Coverage X contained exclusions for liability arising from contract as well as for

intentional acts.

In October 2005 the Burnetts began construction on a house to be located at 22 Hickory Pointe Cove in Little Rock, Arkansas. The Burnetts excavated and removed a large amount of rock and sediment from the side of a large hill to create a flat surface for construction of the house at this location. The Burnetts constructed the house and, in June 2007, sold it to the Bobbitts.

In November 2009 the Bobbitts filed a complaint in the Circuit Court of Pulaski County alleging six causes of action against the Burnetts, including breach of contract, fraud, constructive fraud, negligent construction, breach of implied warranty of habitability, and rescission. The Bobbitts alleged that in September 2007 they learned of standing water beneath their home and subsequently experienced property damage related to water accumulation in the form of cracks to the walls and stucco exterior. In addition, the Bobbitts alleged that on December 2007, they experienced the first of several rock-slides, some of which have resulted in property damage to their driveway and curbing.

Standard for Summary Judgment

Summary judgment is appropriate only when there is no genuine issue of material fact, so that the dispute may be decided solely on legal grounds. *Holloway v. Lockhart*, 813 F.2d 874 (8th Cir. 1987); Fed. R. Civ. P. 56. The Supreme Court has established guidelines to assist trial courts in determining whether this standard has been met:

> The inquiry is the threshold inquiry of determining whether there is a need for trial -- whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

The Eighth Circuit Court of Appeals has cautioned that summary judgment should be

invoked carefully so that no person will be improperly deprived of a trial of disputed factual issues. *Inland Oil & Transport Co. v. United States*, 600 F.2d 725 (8th Cir. 1979), *cert. denied*, 444 U.S. 991 (1979). The Eighth Circuit set out the burden of the parties in connection with a summary judgment motion in *Counts v. M.K. Ferguson Co.*, 862 F.2d 1338 (8th Cir. 1988):

> [T]he burden on the moving party for summary judgment is only to demonstrate, *i.e.*, '[to] point out to the District Court,' that the record does not disclose a genuine dispute on a material fact. It is enough for the movant to bring up the fact that the record does not contain such an issue and to identify that part of the record which bears out his assertion. Once this is done, his burden is discharged, and, if the record in fact bears out the claim that no genuine dispute exists on any material fact, it is then the respondent's burden to set forth affirmative evidence, specific facts, showing that there is a genuine dispute on that issue. If the respondent fails to carry that burden, summary judgment should be granted.

*Id.* at 1339. (quoting *City of Mt. Pleasant v. Associated Elec. Coop.*, 838 F.2d 268, 273-274 (8th Cir. 1988) (citations omitted)(brackets in original)). Only disputes over facts that may affect the outcome of the suit under governing law will properly preclude the entry of summary judgment. *Anderson*, 477 U.S. at 248.

## Discussion

Upon the Burnetts' sale of the property at 22 Hickory Pointe Cove, the Burnetts ceased to have an insurable interest in that property. Consequently, any property damage arising from landslides or accumulation of water that occurred subsequent to the Burnetts' sale of the property is not covered by any policy issued by Allstate to the Burnetts.

In addition, Coverage A, the homeowners coverage, specifically excludes the accumulation of water under the house as well as defective siting and construction work, which means that faulty construction of the house, faulty excavation of the hillside, and any water accumulation occurring prior to the sale of the house do not fall under Coverage A. In brief,

Coverage A provides no protection whatsoever for any of the events alleged in the Bobbitts' state court complaint, whether happening before or after the Burnetts' sale of the house to the Bobbitts.

As for Coverage X, five of the Bobbitts' six claims in the underlying state court action, including breach of contract, fraud, constructive fraud, breach of implied warranty of habitability, and rescission, are excluded under that Coverage's exclusions for liability arising from contract and liability for intentional acts.  That leaves only the Bobbitts' claim for negligent construction.  Under Coverage X, Allstate stated that it would pay, in pertinent part, "damages which an insured person becomes legally obligated to pay because of . . . property damage arising from an occurrence . . . which . . . is covered by this part of the policy."  The Burnett's policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions during the policy period, resulting in bodily injury or property damage."  The important question, then, becomes whether defective siting or construction work is an "accident" under the terms of Allstate's policy.

Under Arkansas law, where the terms of an insurance policy are clear and unambiguous, the policy's language controls.  *Smith v. Shelter Mut. Ins. Co.*, 327 Ark. 208, 937 S.W.2d 180 (1997).  Undefined terms are not necessarily ambiguous.  *Smith v. Southern Farm Bureau Cas. Ins. Co.*, 353 Ark. 188, 192, 114 S.W.3d 205, 207 (2003).  The Arkansas Supreme Court, addressing an insurance policy in which the term "accident" was undefined, found "accident" to mean "an event that takes place without one's foresight or expectation-an event that proceeds from an unknown cause, or is an unusual effect of a known cause, and therefore not expected." *Continental Ins. Co. v. Hodges*, 259 Ark. 541, 534 S.W.2d 764 (1976); *see also United States Fid. & Guar. Co. v. Continental Cas. Co.*, 353 Ark. 834, 845, 120 S.W.3d 556, 563 (2003).

In *Essex Ins. Co. v. Holder*, the Arkansas Supreme Court answered a certified question from this Court regarding whether defective construction or workmanship constitutes an "accident" and, therefore, an "occurrence" within the meaning of commercial general liability insurance policies. 372 Ark. 535, 261 S.W.3d 456 (2008).  The Arkansas Supreme Court cited this Court's decision in *Nabholz Construction Corp. v. St. Paul Fire and Marine Ins. Co.*, 354 F.Supp.2d 917 (E.D. Ark. 2005), in which this Court predicted that the Arkansas Supreme Court would adopt the majority rule that defective workmanship does not constitute an "occurrence" as that term is defined in commercial general liability insurance policies.  372 Ark. at 538, 261 S.W.3d at 459.  That prediction proved accurate, for the Arkansas Supreme Court held "that defective workmanship standing alone-resulting in damages only to the work product itself-is not an occurrence under a [commercial general liability] policy such as the one at issue here." *Id.* at 540, 261 S.W.3d at 460.

The Burnetts attempt to distinguish *Essex* by arguing that they are differently situated than a contractor with commercial general liability insurance coverage.  On their view, contractors are better able to foresee and to protect themselves against legal claims of faulty workmanship, as evidenced by the availability of performance bonds in the commercial marketplace.  Consequently, a legal claim of faulty workmanship against a non-contractor is less foreseeable and, hence, more likely to qualify as an "accident."  But this line of reasoning is not to the point.  After all, it is not a *legal claim* of faulty workmanship, but rather the faulty workmanship *itself* whose foreseeability should be in issue.  And there is no reason to think that faulty workmanship is any less foreseeable when a non-contractor builds a home.  If anything, there is reason to suppose the opposite to be true.  In any case, the availability of performance bonds or other insurance coverage to the Burnetts is immaterial to the present inquiry: whether

the alleged negligent construction is an "accident" under the insurance coverage that the Burnetts *actually* had.

Given the Arkansas Supreme Court's definition of "accident" and its prior holding that defective workmanship is not an "occurrence" under commercial general liability insurance policies, the Court finds that the alleged defective siting and construction work in this case is not an "accident"–and hence, not an "occurrence"–under the Burnetts' family liability coverage.[1] There being no genuine issues of material fact, the Court finds that Allstate has neither a duty of indemnification nor a duty to provide a defense to the Burnetts with respect to the six claims brought by the Bobbitts in the underlying state court action.

<u>Conclusion</u>

For the reasons set forth above, Plaintiffs' Motion for Summary Judgment (Docket # 8) is GRANTED. The Clerk is directed to close the case.

IT IS SO ORDERED this 21st day of December, 2010.

*[signature]*
James M. Moody
United States District Judge

---

[1] The Court is careful to make only those findings essential to the disposition of this motion for summary judgment. The Court does not address itself to the broad question of whether there was any "occurrence" under the Burnetts' coverage *tout court*, but only to the more circumscribed question of whether there was any "occurrence" that obligates Allstate, under the terms of its coverage, to indemnify or to defend the Burnetts against the six specific claims alleged by the Bobbitts in the underlying state court action.